Richard BAKSALARY, et al.

v.

Paul J. SMITH, et al.

In re Mary McGETTIGAN

v.

COMMERCIAL UNION
INSURANCE COMPANY.

Civ. A. No. 76–429.

United States District Court,
E.D. Pennsylvania.

Aug. 29, 1986.

Loralyn McKinley, Harold I. Goodman, Community Legal Services Inc., L. Oliver Frey, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for petitioner.

Martin J. Fallon, Philadelphia, Pa., for Commercial Union Ins. Co.

MEMORANDUM

PER CURIAM:

*Findings of Fact*

1. Petitioner Mary McGettigan, an employee of Automatic Data Processing

(ADP), and a member of the plaintiff class, slipped and fell at the ADP cafeteria on July 27, 1981.

2. On March 31, 1982, respondent Commercial Union Insurance Company, ADP's workmen's compensation carrier, and a member of the class of defendant insurance carriers, issued a check to Ms. McGettigan in the sum of $515.06. This check constituted compensation benefits for three weeks and five days of intermittent disability between July 27, 1981 and March 30, 1982. On July 27, 1982, Commercial Union issued to Ms. McGettigan its check for $138.67, reflecting benefits for intermittent hours, aggregating about a week in toto, lost from work between April 11, 1982 and July 11, 1982. The July 27, 1982 payment is the last disability compensation payment made by Commercial Union to Ms. McGettigan. Pursuant to the Workmen's Compensation Act, Commercial Union has paid Ms. McGettigan's medical expenses and continues to make provision for medical benefits.

3. From July 27, 1982 to November 29, 1984, Ms. McGettigan received wages on a full time basis from ADP.

4. On July 27, 1982—the day of Commercial Union's last disability compensation payment to Ms. McGettigan—Judy L. Weber of Commercial Union sent to Susan McLaughlin, Esq., of Harvey, Pennington, Herting & Renneisen, counsel to Ms. McGettigan, a "notice of compensation payable" with the request that Ms. McGettigan sign and return the document. The "notice of compensation payable" stated, in pertinent part:

> Injury occurred on 7/27/81. Claimant has continued work and has lost intermittant [sic] hours from employment for which she was reimbursed; compensation benefits are suspended as of 7/27/81.

After a further request to claimant's counsel, the "notice of compensation payable" was signed by Ms. McGettigan. Just when Ms. McGettigan signed is uncertain, but it is agreed by the parties that the signing was subsequent to March 17, 1983.

5. In January of 1984, David L. Pennington, Esq. of Harvey, Pennington, Hert-

ing & Renneisen, filed on Ms. McGettigan's behalf a "Petition for Reinstatement of Compensation," which appears to have been principally directed to the carrier's alleged refusal "to pay reasonable and necessary medical expenses" and "to enter into a supplemental agreement recognizing the recurrence of disability." After several hearings, Workmen's Compensation Referee Carl M. Lorine entered an order (1) noting that "[a]t the hearing of October 16, 1984 counsel for the claimant moved that the instant Petition be marked withdrawn" and (2) directing that the petition be so marked.

6. "Not having received disability compensation from either her employer or Commercial Union after November 29, 1984 Class Plaintiff McGettigan filed a second Petition for Reinstatement of Compensation dated April 24, 1985, alleging, *inter alia*, that her disability had re-occurred on November 24, 1984." Stipulation of Fact, paragraph 24. At the close of a hearing before Referee Lorine, held on June 19, 1985, at which L. Oliver Frey, Esq. of Harvey, Pennington, Herting & Renneisen, represented Ms. McGettigan and Thomas C. Lowry, Esq. of Swartz, Campbell & Detweiler represented Commercial Union, the following colloquy was had between the Referee, Mr. Frey and Mr. Lowry:

MR. FREY: To quote your own words, your Honor—

THE REFEREE: Rather than quoting my own words, I look at this notice of compensation payable and I misspoke.

Apparently, claimant did sign this document with somebody named Judy Weber.

Unfortunately, it states over here under remarks that the injury occurred on 7/27/81, claimant has continued working and has lost intermittent hours from employment for which she was reimbursed, compensation benefits are suspended—and it says, as of 7/27, and it is penciled or it is penned in as of 7/27/81.

Now I am not sure of the effect of that because if she lost intermittent time for which she was reimbursed how could her benefits be suspended as of 7/27/81?

In fact, if she was paid, if she was reimbursed for intermittent lost hours after 7/27/81 then I think that the defendant would in fact be removing suspension because again we have a suspension here as of 7/27/81.

It doesn't seem to make a lot of sense to me because again if in fact she was paid and I don't remember to repeat myself if she was paid or she was reimbursed for the intermittent lost hours after 7/27/81 it would appear that the defendant and/or the defendant carrier has removed the suspension and admitted that she had—that they have liability.

So, I would say this: I think you fellows ought to talk about this matter. It would appear to me at first blush that Commercial Union Insurance Company and the Automatic Data Processing is refusing to pay this claim at great peril to themselves.

I of course will entertain hearing or at least a motion to hold a hearing on penalties pursuant to Section 435 of the Act.

MR. FREY: So moved.

THE REFEREE: Well, I thought you already did.

We talked about that already and you had already asked for subpoenas.

You can call my office and subpoena any insurance company records or insurance company personnel that you think you should subpoena and if they won't appear I assume you will enforce them.

MR. FREY: Yes, sir.

MR. LOWRY: Your Honor, if counsel can identify the individual—

MR. FREY: It will be William Jordon and Judy Weber at this time. Additional names may be necessary as the file may have been handled by other people involved as of this last date.

THE REFEREE: Now the practical application of this is how does the claimant want to proceed and of course that is up to the claimant.

Again, I think—it is my opinion and of course I don't feel that I can yet write a decision until the parties rest, that if in fact the defendant paid to the claimant compensation on wages in lieu of compensation after the suspension of the benefits set forth on the notice of compensation payable and according to I guess the insurance company's note here benefits were suspended as of 7/27/81, I would think then the suspension was removed by the defendant and/or the defendant carrier and we are really faced with an open notice of compensation payable.

And it would appear that the defendant should continue to pay benefits to the claimant and if in fact the defendant feels that the claimant is no longer entitled to benefits or that she is suffering now from injuries not related or problems not related to the work related injury that we talked about it would seem to be their burden to demonstrate that to me through medical evidence.

Now I will leave it to you gentlemen to see what you can work out. That is my position.

However, how you want to work this out procedurally is up to you.

MR. FREY: Thank you, your Honor.

7. According to Martin J. Fallon, Jr., Esq. of Swartz, Campbell & Detweiler, who represented Commercial Union at the argument before this Court on July 1, 1986 (at which Loralyn McKinley, Esq. and Harold I. Goodman, Esq., as class counsel, represented Ms. McGettigan, Mr. Frey not being present), further hearings on the second Petition for Reinstatement have been continued at Mr. Frey's request pending this Court's disposition of the motion to hold Commercial Union in contempt.

8. According to paragraph 14 of the parties' Stipulation of Fact "[I]t is agreed that Sections 407 and 408 of the Pennsylvania Worker's Compensation Act are applicable to this case."

*Conclusions of Law*

1. Because, since November 29, 1984, respondent Commercial Union has paid no compensation benefits to petitioner McGettigan and such non-payment has not been authorized by an order entered by a Workmen's Compensation Referee, petitioner contends that respondent is in contempt of

the Consent Decree approved by this Court on July 30, 1984, 591 F.Supp. 1279.

2. Paragraph 5 of the Consent Decree provides, in pertinent part:

Each named and class defendant insurance carrier is hereby ENJOINED now and in the future from invoking in any way the automatic supersedeas provision of section 413(a) of the Pennsylvania Workmen's Compensation Act to terminate the payment of worker's compensation benefits.

3. Section 413(a) of the Pennsylvania Workmen's Compensation Act, the "automatic supersedeas" provision of the Act, was the only section of the Act which this Court (1) declared unconstitutional in the proceedings culminating in this Court's Order of July 30, 1984, and (2) enjoined the enforcement of in the Consent Decree of that date. Section 413(a) was declared unconstitutional, and its enforcement was enjoined, because the section's authorization of unilateral termination of compensation benefits, without notice and the opportunity for some form of hearing prior to termination, was held to contravene the due process clause of the Fourteenth Amendment. See *Baksalary v. Smith*, 579 F.Supp. 218, 591 F.Supp. 1279 (E.D.Pa. 1984).

4. Section 413(a) was not, either in terms or by reference, invoked by respondent in justifying the non-payment of benefits complained of by petitioner. Petitioner contends, however, that respondent's unilateral suspension of petitioner's benefits was the functional equivalent of the conduct enjoined by this Court in the July 30, 1984 Consent Decree.

5. Respondent, in defense of the suspension of benefits, has purported to rely on what it asserts is petitioner's agreement to suspension of benefits "as of 7/27/81" embodied in the document signed by Ms. McGettigan and entitled "notice of compensation payable."

6. Whether Ms. McGettigan's signature on the "notice of compensation payable" is a sufficient justification, under the Workmen's Compensation Act, for the challenged suspension of benefits, is a question of state law on which we express no opinion. We note, however, that petitioner invoked remedies available under state law by filing her second "Petition for Reinstatement of Compensation." We also note that, as of June 19, 1985, Referee Lorine expressed considerable doubt about whether respondent's defense was viable as a matter of state law: —"it would appear that the defendant should continue to pay benefits to the claimant and if in fact the defendant feels that the claimant is no longer entitled to benefits or that she is suffering now from injuries not related or problems not related to the work related injury that we talked about it would seem to be their burden to demonstrate that to me though medical evidence." We further note that, although Referee Lorine encouraged the parties to pursue the issues as he had tentatively defined them ("I will leave it to you gentlemen to see what you can work out. That is my position. However, how you want to work this out procedurally is up to you"), counsel for petitioner appears to have preferred to postpone further recourse to remedies under the Workmen's Compensation Act pending this Court's disposition of the present application to hold respondent in contempt.

7. On the present record, petitioner has not satisfied us that respondent's non-payment of benefits to petitioner since November 29, 1984, constitutes a breach or circumvention of the duties imposed on respondent by the July 30, 1984 Consent Decree. Nor are we persuaded, on the present record, that the entitlements petitioner has asserted under state law—entitlements paralleling those sought before this Court—cannot, to the extent that they are warranted as a matter of state law, be effectively vindicated before the Workmen's Compensation Commission and the courts of Pennsylvania.

8. For the foregoing reasons, this Court, by Order filed on July 8, 1986, denied petitioner's motion to hold respondent in contempt. Such denial was, however, without prejudice to renewal of the motion on a different factual record. The purpose

of this Memorandum is to explain the bases for this Court's Order of July 8, 1986.