**Richard BAKSALARY, et al.**

v.

**Paul J. SMITH, et al.**

**In re Lawrence STEINBERG.**

**Civ. A. No. 76–429.**

United States District Court, E.D. Pennsylvania.

April 19, 1989.

Paul Auerbach, Merion, Pa., for plaintiffs.

Joseph S. Bekeja, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff, Lawrence Steinberg, contends that defendant Home Insurance Company's failure to reimburse him for all medical expenses incurred following his work-related injury violates the Consent Decree entered by the parties and approved by a three-judge panel in *Baksalary v. Smith*, 591 F.Supp. 1279 (E.D.Pa.1984).

For the purposes of this motion, the parties have submitted the following stipulated facts:

1. Lawrence Steinberg (Steinberg) was injured on October 1, 1980 while in the course of his employment. Steinberg has testified, uncontradicted, that he fell, striking his head and back on his employer's machinery and/or floor. He also testified, uncontradicted, that the trauma rendered him unconscious.

2. Home Insurance Company (Home) as the employer's workman's compensation insurer, paid total disability benefits from October 2, 1980 which payments are continuing. A Notice of Compensation Payable (NCP) was filed whereby Home recognized a "lower back strain with bruised coccyx." Under Pennsylvania law the NCP must be filed within 21 days of the accident and is not conclusive on the employee who is not involved in its preparation.

3. Home was a class defendant in the captioned litigation.

4. In May, 1981, Steinberg came under the care of Parviz Kambin, M.D. a Board certified orthopedic surgeon. In March, 1982, Kambin had Steinberg admitted to the Graduate Hospital and diagnosed Steinberg as having a herniated lumbar disc and, in his opinion, an accident related psychological overlay and depression. Home had Steinberg evaluated on November 23, 1982 by John T. Williams, M.D., a Board certified orthopedic surgeon who was of the opinion that Steinberg had effected a full and final recovery from any and all orthopedic injuries.

5. Before operating in March 1982, Dr. Kambin was concerned about Steinberg's psychological state and had Arnold Sadwin, M.D. a Board certified psychiatrist, examine Steinberg in Graduate Hospital. Dr. Sadwin did not believe that Steinberg was able to tolerate an operation due to the psychological trauma. It is Dr. Sadwin's opinion that Steinberg's psychological problems are related to the October 1, 1980 accident. Dr. Sadwin is also of the opinion that Steinberg had a pre-existing borderline personality disorder which was and still is aggravated by the October 1, 1980 accident.

6. Both Dr. Kambin and Dr. Sadwin continued to treat Steinberg and are still doing so to date. Dr. Sadwin has ordered psychological tests through Dr. J. Gordon at the University of Pennsylvania and Dr. I. Gerson. All doctors have written reports diagnosing objective findings of physical and psychological problems. Dr. Sadwin also ordered psychological therapy through Dr. J. Porter, a Professor at West Chester University, whose opinion is consistent with that of Dr. Sadwin.

7. Home was aware of the March 1982 hospitalization at Graduate, and the psychiatric problems discovered therein, within a reasonable time thereof and paid for said bill.

8. Home received directly and/or indirectly (through counsel) reports from Dr. Sadwin, Dr. Porter and Dr. Kambin throughout 1982, 1983, 1984 and 1985 and was aware of their opinions.

9. Home paid Dr. Kambin's bill for 1982/83 services (over $1,700) on January 6, 1984. However, his subsequent treatment bills have been timely paid to date. Home recognizes its liability to pay for Dr. Kambin's orthopedic tests, appliances and prescriptions and believes that it has paid

same. However, Steinberg contends that he has not been reimbursed for any of Dr. Kambin's prescriptions (submitted to Home) and that he has no knowledge of the payment of the bills for tests and appliances whose providers have been dunning him.

10. Dr. Sadwin's bills were paid through November 1983 but have not been paid since. Home has refused to pay Dr. Sadwin's prescriptions from 1982 to date. Dr. Sadwin's unpaid bills total about $2,800.

11. Dr. Porter's bill, totalling about $2,600 for treatment from 1982 to July 1984 was not paid until about August 1984. Subsequent bills have not been paid and total about $9,800.

12. Dr. Gordon's bill of $1,250 has been paid totally by Steinberg while Home refuses to reimburse him. Dr. Gerson's net bill of about $2,500 is still outstanding although a partial payment was previously made thereon. Home had the reports of Dr. Gordon and Dr. Gerson in 1984.

13. Subsequent to Dr. Williams' examination, Home filed a Termination Petition and requested a supersedeas. The supersedeas hearing was held in April 1983 and the reports of Dr. Kambin, Dr. Sadwin, Dr. Porter and Dr. Williams were presented to the Referee together with oral testimony of Steinberg and his father.

14. On April 25, 1983, the Referee denied the supersedeas.

15. In July, 1983, as the medical bills continued to accumulate unpaid, Steinberg filed a petition for the payment of medical bills. Steinberg believes that the supersedeas denial requires payment of all medical bills while Home believes that psychiatric bills were not subject to the denial. The Referee has stated that he will not decide said petition until the entire case is completed. There has been no improvement in the rapidity of decision making in the compensation process since the "at least one year delay" stipulation made in the *Baksalary* case.

16. Home rested its direct case with Dr. William's deposition. Steinberg took Dr. Kambin's deposition and on May 5, 1985, took Dr. Sadwin's deposition.

17. On May 5, 1985, after Dr. Sadwin's deposition, Home, for the first time, requested its own psychiatric examination. Steinberg agreed [to the examination] provided Home paid all outstanding medical to May 5, 1985. Home refused.

18. Home's position is that Steinberg be evaluated by a Board certified psychiatrist of its choice before paying any of claimant's psychiatric related bills.

19. In August, 1985 Home filed a petition with the Workman's Compensation Appeal Board (WCAB) to obtain an order for an examination.

20. In January 1986, WCAB denied the request.

21. Home changed counsel and present counsel filed a Petition to Reconsider. WCAB granted said petition in April 1986 and that order had been appealed to the Pennsylvania Commonwealth Court.

22. Dr. Sadwin and Dr. Porter have issued reports providing that the refusal of Home to pay the bills has resulted in a decrease of necessary treatment and an aggravation of Steinberg's psychological and emotional condition.

23. Prior to the accident, Steinberg held down two full-time jobs and had not sought or received any care for psychological or lumbar problem. He socialized normally, was a boy scout and otherwise physically active.

24. The Commonwealth of Pennsylvania has a supersedeas fund to protect employers who pay benefits pending termination litigation and are, ultimately, successful in the litigation. Home is unclear that the fund will reimburse it for said payments.

### Discussion

The Consent Decree which sets forth the rights and obligations of the parties in this action emerged after a three-judge panel invalidated Section 413 of the Pennsylvania Workmen's Compensation Act, Pa.Stat. Ann. tit. 77, § 774—the automatic supersedeas provision—as violative of the Fourteenth Amendment of the United States Constitution. *Baksalary v. Smith*, 579

F.Supp. 218 (E.D.Pa.1984). The three-judge panel approved the Consent Decree in 1984. *Baksalary v. Smith*, 591 F.Supp. 1279 (E.D.Pa.1984).[1]

The precise question in this case is whether an insurer's failure to reimburse a claimant for medical bills which, in the insurer's view, are not reasonable, necessary and related to the claimant's injury, constitutes a violation of the *Baksalary* Decree.

As the stipulated facts indicate, plaintiff suffered a work-related injury for which he has received, and continues to receive, weekly disability payments. Defendant sought a supersedeas in April, 1983, which was subsequently denied. Both before and after the denial of the supersedeas, plaintiff requested but did not receive from defendant full payment for psychiatric and psychological services rendered to him following his accident. The defendant, contending that plaintiff's psychological difficulties stem not from plaintiff's work-related injury but from a preexisting psychological condition, refuses to honor plaintiff's bills for psychiatric injury unless plaintiff undergoes evaluation by an insurer-selected psychiatrist.[2] Plaintiff, on the other hand, maintains that the insurer's refusal to honor all medical expenses submitted pursuant to a work-related injury following the denial of a supersedeas deprives plaintiff of right secured by the *Baksalary* Decree; in plaintiff's view, an insurer's failure to pay medical bills after the denial of a supersedeas undermines the central holding of *Baksalary*—that a claimant should not be denied benefits without prior notice or an opportunity to be heard.

The parties have recently submitted conflicting authority regarding an insurer's obligation under Pennsylvania law to pay all medical bills submitted by a claimant. Defendant cites a June, 1988 Opinion from the Workmen's Compensation Appeal Board in which the Board held that a self-insured employer did not violate the Act by refusing to pay for medical expenses which it reasonably believed to lack a causal nexus to the claimant's injury. *Miller v. Westinghouse Electric Corporation*, A–95044, slip op. (Workmen's Compensation Appeal Board) (June, 1988). Plaintiff relies on a more recent decision by a panel of the Commonwealth Court of Pennsylvania which concluded, in the context of a suit for past medical expenses, that the employer/insurer, and not the claimant, bears the burden of proving that medical bills are not causally related to the claimant's injury. *Lehigh Valley Refrigeration Services v. Workmen's Compensation Appeal Board*, 548 A.2d 1321, 1322 (Pa.Cmwlth.1988).

The parties' reliance on state court authority to support their respective positions suggests strongly that the appropriate forum for the resolution of their dispute rests with the Workmen's Compensation Commission and the courts of the Commonwealth. The *Baksalary* decision did not purport to address state law questions regarding the rights and responsibilities of claimants and employers/insurers under the Pennsylvania Workmen's Compensation Act. Nor did the ensuing Decree contemplate continuing federal supervision over Pennsylvania Workmen's Compensation claims. By its terms, the Decree is limited to remedying and enjoining employer reliance on the constitutionally infirm automatic supersedeas provision of the Workmen's Compensation Act.[3]

The defendant in this case did not rely on the automatic supersedeas provision in refusing to reimburse plaintiff for claimed

---

1. This suit is not the first occasion on which a party has sought federal enforcement of rights secured by the *Baksalary* Consent Decree. *See, e.g., Baksalary v. Smith (In re Sabatine)*, 693 F.Supp. 242 (E.D.Pa.1988). As in *Sabatine*, the present motion for contempt is properly before one judge, rather than the original three-judge panel, because it does not "raise anew the question whether any provision of state law is unconstitutional, but rather deal[s] with whether [a] member[ ] of defendant class ha[s] complied with [its] constitutional obligations as outlined in the three-judge panel's opinion on the mer-

its." *Baksalary v. Smith (In re Sabatine)*, 693 F.Supp. 240, 241 (E.D.Pa.1988) (citation omitted).

2. As of this date, it appears that the Workers' Compensation Appeal Board has ordered plaintiff to submit to a physical examination before a board-certified psychiatrist.

3. The Decree declares the automatic supersedeas provision to be unconstitutional (Section III of Decree), enjoins class defendants from invok-

medical expenses. Nor did defendant breach or circumvent duties imposed on it by the Decree. *Cf. Baksalary v. Smith (In re McGettigan)*, 662 F.Supp. 344 (E.D. Pa.1986) (insurer's suspension of benefits based on claimant's failure to submit notice of compensation payable did not fall within the scope of the decree). Rather, the defendant has withheld payment on certain medical expenses to which plaintiff claims entitlement. As in *McGettigan*, plaintiff's alleged entitlement, to the extent it is warranted under state law, is capable of vindication in a state forum.

In sum, the *Baksalary* Decree did not establish a framework for federal supervision of Pennsylvania Workmen's Compensation claims. For that reason, this court will not attempt to resolve the question of state law presented by plaintiff's motion. Accordingly, plaintiff's motion to hold defendant in contempt will be denied in an accompanying order.

### ORDER

For the reasons stated in the accompanying Memorandum, plaintiff's motion to hold defendant in contempt is hereby DENIED.

ing the automatic supersedeas provision (Section IV), establishes injunctive relief for members of the plaintiff class whose benefits were terminated under the automatic supersedeas procedure (Section V), and describes procedural safeguards to be employed in the special supersedeas hearings that form part of the Decree's injunctive relief (Section VI). *See Baksalary v. Smith*, 591 F.Supp. 1279, 1292–99 (E.D.Pa.1984) (Appendix).